IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Thomas Lucious Holbrooks, | ) | Civil Action No.: 8:13-2220-RMG-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for Social Security Income ("SSI") benefits.[1]  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

On May 4, 2009, Plaintiff filed an application for SSI alleging an onset of disability date of March 31, 2007.[2]  [R. 154–58.] Plaintiff's claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 96–97, 109–10.]  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and, on

---

[1]To establish entitlement to SSI benefits, an individual must prove that he met the financial eligibility requirements and that he is disabled.  *See Massey v. Colvin*, No. 3:12-CV-385-MOC, 2013 WL 3776484, at *2 (W.D.N.C. July 13, 2013), *aff'd*, 547 F. App'x 208 (4th Cir. 2013); *see also* 42 U.S.C. §§ 1381a, 1382.

[2]Thereafter, Plaintiff amended the alleged disability onset date to May 22, 2008. [R. 21.]

December 20, 2011, ALJ Francis W. Williams conducted a de novo hearing on Plaintiff's claims. [R. 39–95.]

The ALJ issued a decision on March 1, 2012, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 18–38.] At Step 1,[3] the ALJ found Plaintiff has not engaged in substantial gainful activity since May 4, 2009, the application date. [R. 23, Findings 1.] At Step 2, the ALJ found Plaintiff had the following severe impairments: mild degenerative disc disease and substance abuse with narcotic dependency. [R. 23, Finding 2.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 23–25, Finding 3.] The ALJ specifically considered Listing 1.00, 12.04, and 12.09. [*Id.*]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> I find that, based on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to perform unskilled work with restrictions that require lifting and/or carrying no more than 20 pounds occasionally and 10 pounds frequently; no more than occasional stooping, twisting, crouching, kneeling, climbing stairs/ramps, crawling, and balancing; no climbing ladders, ropes, or scaffolds; and missing an average of 4 days of work a month.

[R. 25, Finding 4.] Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work as a heavy equipment operator, farm carpenter, a property attendant, and a dump truck driver. [R. 29, Finding 5.] Considering Plaintiff's age,

---

[3] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

education, work experience, and RFC based on all of Plaintiff's impairments, including the substance use disorders, the ALJ concluded that there are no jobs that exist in significant numbers in the national economy that the Plaintiff can perform.  [R. 29, Finding 9.]

The ALJ further concluded, however, that if Plaintiff stopped the substance use, he would continue to have a severe impairment of mild degenerative disc disease.  [R. 30, Finding 10.]  The ALJ also found that, if Plaintiff stopped the substance abuse, he would retain the RFC to

> perform work with restrictions that require lifting and/or carrying no more than 20 pounds occasionally and 10 pounds frequently; no more than occasional stooping, twisting, crouching, kneeling, climbing stairs/ramps, crawling, and balancing; no climbing ladders, ropes, or scaffolds.

[R. 31, Finding 12.] The ALJ also found that, even if Plaintiff stopped the substance use, he would continue to be unable to perform past relevant work.  [R. 32, Finding 13.] However, if Plaintiff stopped the substance use, considering his age, education, work experience, and RFC, the ALJ found that there would be a significant number of jobs in the national economy that Plaintiff could perform.  [R. 32–33, Finding 15.]  The ALJ found that Plaintiff's substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use; and, because the substance use disorder is a contributing factor material to the determination of disability, the ALJ found that Plaintiff had not been disabled within the meaning of the Act at any time from the date the application was filed through the date of the decision.  [R. 33, Finding 16.]   The ALJ, thus, declined to award SSI benefits. [R. 34.]

3

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review. [R. 1-6.] Plaintiff filed this action for judicial review on August 15, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence, and the ALJ erred by

1.    failing to properly assess the opinion evidence of Plaintiff's treating physicians, Drs. Ayanna Swinton-Jamison and Floyd Cribbs; and,

2.    failing to adequately explain his RFC determination.

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

1.    properly discounted the treating source opinions of record, assuming the absence of substance abuse, and/or in light of inconsistent objective laboratory evidence; and,

2.    articulated RFC findings that are based on substantial evidence.

Accordingly, the Commissioner requests that the Court affirm the ALJ's decision.

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687

4

(S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts

5

to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).   Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals

6

Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.  *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit,

whether or not a profit is realized, *id.* § 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* § 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]    20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . .

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 416.969a(c)(1).

. and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3)

13

supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

15

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself,

> support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings

17

based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Treating Physician Opinions**

Plaintiff takes issue with the ALJ's weighing of the treating opinion evidence of record contending that the ALJ failed to properly assess the opinions of Drs. Ayanna Swinton-Jamison ("Dr. Swinton-Jamison") and Floyd A. Cribbs ("Dr. Cribbs"). [Doc. 22 at 23.]  Plaintiff argues that Dr. Swinton-Jamison's opinions, which are supported by Dr. Cribbs's opinions, were improperly dismissed by the ALJ based entirely on speculation. [*Id.*] Plaintiff also challenges the ALJ's finding that Plaintiff is disabled but able to perform a wide range of light work with no mental impairments in the absence of substance use.  [*Id.* at 24–25 (emphasis in original).] Plaintiff argues that, in light of SSR 13-2p, the ALJ's discussion failed to include sufficient information to find that substance abuse was a material factor in this case. [*Id.* at 26.]  The Commissioner, on the other hand, contends the ALJ embraced Dr. Swinton-Jamison's opinion that Plaintiff's combined impairments were disabling in his usual state of narcotic dependence, but the ALJ also gave sufficient reasons for his materiality findings with respect to Plaintiff's substance use.  [Doc. 24 at 18–20.]  The Court agrees with the Commissioner.

### *Relevant Medical Evidence*

#### *Dr. Swinton-Jamison's Opinion*

Plaintiff began seeing Dr. Swinton-Jamison of A.S.Y. Counseling Services, Inc., on or about March 17, 2010.  [R. 600.]  Physician progress notes dated June 16, 2010, August

18

25, 2010, September 23, 2010, October, 21, 2010, January 5, 2011, March 9, 2011, August 9, 2011, August 24, 2011, September 20, 2011, and November 2, 2011, indicate Plaintiff was compliant with his medication, stable and presented well-groomed with normal gait, good eye contact, normal rate and tone, logical and goal-oriented, with fair judgment and insight. [*See* R. 583–94.]   These same treatment notes indicate Plaintiff was able to manage his anxiety.   [R. 583–85, 587–88.]   One progress note dated July 7, 2010, indicates Plaintiff was compliant with medication and presented stable and well-groomed with good eye contact, normal rate and tone, logical and goal-oriented, with fair judgment and insight, but with abnormal gait. [R. 593.]  Another note dated August 9, 2011, indicates Plaintiff was having difficulty managing anxiety with increase in stressors and that he continued having trouble finding a pain management doctor. [R. 586.]

On December 8, 2011, Dr. Swinton-Jamison completed a Medical Opinion Re: Ability To Do Work Related Activities (*Mental*) for Plaintiff.  [R. 608–09.] In evaluating Plaintiff's mental abilities and aptitude to do unskilled work, Dr. Swinton-Jamison indicated that Plaintiff was "seriously limited but not precluded from:"

* Making simple work-related decisions; and,
* Asking simple questions or requesting assistance.

Dr. Swinton-Jamison noted, however, the Plaintiff was "unable to meet competitive standards" with respect to:

* Remembering work-like procedures;
* Understanding and remembering very short and simple instructions;
* Carrying out very short and simple instructions;
* Maintaining attention for a two hour segment;
* Maintaining regular attendance and being punctual with customary, usual strict tolerances;
* Sustaining ordinary routine without special... (unreadable)...without being unduly distracted;

19

     *       Completing a normal workday and workweek without interruptions from psychologically based symptoms;

     *       Performing at a consistent pace without an unreasonable number and length of rest periods;

     *       Accepting instructions and respond appropriately to criticism from supervisors;

     *       Getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes;

     *       Responding appropriately in changes...(unreadable); and,

     *       Being aware of normal hazards and taking appropriate precautions.

[R. 608.] Dr. Swinton-Jamison also noted that Plaintiff was diagnosed with mood disorder not otherwise specified, ADHD, and pain disorder. [*Id.*]

With respect to Plaintiff's mental abilities and aptitude to do semiskilled and skilled work, Dr. Swinton-Jamison noted Plaintiff was unable to meet competitive standards with respect to:

     *       Understanding and remembering detailed instructions;

     *       Carrying out detailed instructions;

     *       Setting realistic goals or making plans independently of others; and

     *       Dealing with stress of semiskilled and skilled work.

[R. 609.] With respect to Plaintiff's mental abilities and aptitude to do particular types of jobs, Dr. Swinton-Jamison noted Plaintiff was limited but satisfactory with respect to his ability to adhere to basic standards of neatness and cleanliness. [*Id.*] She also noted that he was seriously limited, but not precluded from:

     *       Maintaining socially appropriate behavior; and,

     *       Traveling in unfamiliar places.

[*Id.*]

### *Dr. Cribbs's Opinion*

Treatment notes from Dr. Cribbs of Agape Senior Primary Care–West Columbia indicate Plaintiff was seen on September 15, 2011, with a medical history of chronic back

pain, bipolar 2 disorder, and renal cell cancer.[8]  [R. 605.]  Plaintiff was noted to be in no acute distress, well developed, well nourished, and average weight. [R. 606.]   An examination of Plaintiff's extremities revealed normal findings. [*Id.*] On October 10, 2011, Plaintiff presented to Dr. Cribbs with complaints of chronic pain with occasional radiation down his legs and his left leg giving out occasionally. [R. 603.] Plaintiff's physical exam was normal and his neurological exam showed good sensation and mild back pain on palpitation but no radiation. [*Id.*] Plaintiff returned to Dr. Cribbs on November 14, 2011, again complaining of chronic pain with occasional radiation down his legs and his left leg giving out occasionally. [R. 601.]   Treatment notes indicate Plaintiff did not seem to be in a large amount of pain. [*Id.*]  Plaintiff's physical exam again returned normal results. [*Id.*]

On December 19, 2011, Dr. Cribbs completed a Medical Statement with respect to Plaintiff.  [R. 611–12.]  In response to a question asking whether Plaintiff's subjective symptoms (complaints of back pain, muscle spasms, episodes of weakness in his left leg, depression, and medication side-effects) were consistent with his diagnoses as confirmed by objective clinical and laboratory findings, Dr. Cribbs responded "yes."  [*Id.*] Dr. Cribbs noted that the objective clinical and laboratory findings supporting the subjective symptoms include palpitation pain in the lower back on exam, pain in the back and shoulders, and muscle spasms in the shoulders.  [*Id.*]  Dr. Cribbs also opined that, considering the definition of sedentary work under Social Security law, Plaintiff is not able to perform sedentary work on a full time sustained basis for eight hours a day, 40 hours a week.  [*Id.*] In explaining his response, Dr. Cribbs further indicated, "likely if sedentary and not moving

---

[8]In 2006, Plaintiff lost a kidney to cancer. [R. 63–64.]

could have...(*not legible*)...back pain." [R. 612.]  Additionally, given his impairments, Dr.

Cribbs opined Plaintiff would be absent from work more than 4 days a month. [*Id.*]

### *ALJ's Treatment of Medical Opinions*

With respect to the Medical Opinion Statement from Dr. Swinton-Jamison dated

December 8, 2011, the ALJ found the opinion worthy of little weight if Plaintiff stopped

substance abuse.  [R. 27.]  The ALJ explained as follows:

> In a Medical Opinion Statement dated December 8, 2011, Dr.
> Jamison confirmed that the claimant had remained "relatively
> stable" but that he continued to have problems with stress
> management, labile mood, and poor social and cognitive
> functioning that had resulted in inability to meet competitive
> standards in such basic work-related mental functions as
> maintaining sustained attention, carrying out simple
> instructions, maintaining regular attendance, getting along with
> coworkers, and completing a normal workday and workweek.
> It was her estimation that, because of his symptoms, he would
> be absent from work for more than four days a month (Exhibit
> 20F).  I note that subsequently, Dr. Jamison refused to
> prescribe narcotics for the claimant, suggesting a belief of
> substance abuse.  Based on the overall findings and evidence,
> it appears that the limitations noted by Dr. Jamison included
> limitations based on subjective complaints, which were
> adversely affected by substance abuse and drug-seeking
> behavior.

[*Id.*]  The ALJ also noted that while Plaintiff was diagnosed with depression and anxiety in

February 2009, and received regular psychiatric treatment from Dr. Swinton-Jamison about

every two months, treatment notes show that Plaintiff's symptoms were stable with interval

adjustments to his medication.  [R. 24, 26].

With respect to Dr. Cribbs's December 19, 2011, medical statement finding Plaintiff

incapable of performing sedentary work, the ALJ gave the opinion little weight as it was not

supported by the laboratory evidence of "mild disc disease, few clinical abnormalities, and the claimant's own admission that he was doing well regarding his back pain." [R. 28.]

### Discussion

The responsibility for weighing evidence falls on the Commissioner or the ALJ, not the reviewing court. *See Craig*, 76 F.3d at 589; *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520. The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir.2005) (*citing* 20 C.F.R. § 404.1527). ALJs typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

Additionally, Social Security Ruling ("SSR") 96–2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the

> greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*16 1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C .F.R. § 404.1527(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairments meet or equal a listing, or the claimant has a certain RFC).

Plaintiff challenges the ALJ's basis for rejecting Dr. Swinton-Jamison's opinion as being speculative. [Doc. 22 at 23.] Plaintiff argues that "[n]o where in the opinion or in the records did Dr. [Swinton-]Jamison indicate that her opinion or diagnoses were based on [Plaintiff's] subjective complaints versus her professional opinion based on the usual methods that medical professions use to make medical diagnoses" and that Dr. Swinton-Jamison, in providing her opinion, never mentioned Plaintiff's past substance abuse as a factor. [*Id.* at 23–24.] The ALJ, however, in light of evidence of Plaintiff's substance abuse, was obligated to determine which of Plaintiff's physical and mental limitations dictating a disability determination would remain if Plaintiff stopped using drugs or alcohol. The ALJ

24

was then required to determine whether any or all of Plaintiff's remaining limitations would be disabling.

The law provides that a person will "not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." *Shunkwiler v. Astrue*, C/A No. 6:07-921-TLW-WMC, 2009 WL 302307, at *20 (D.S.C. Feb. 9 , 2009) (citing 42 U.S.C. § 423(d)(2)(C) and 20 C.F.R. § 404.1535(a) (precludes an award of disability benefits if alcohol or drug abuse was "a contributing factor material to the Commissioner's determination that the individual is disabled")).  As explained in *Shunkwiler*,

> The ALJ makes this determination by first evaluating whether the claimant is disabled under the Act.  If the ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis of determining whether the drug or alcohol addiction is a contributing factor material to the determination of disability.  If the claimant is disabled under the Act and there is medical evidence of drug or alcohol addiction, then the ALJ must determine whether the claimant would still be disabled if he stopped using alcohol or drugs.  If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability.  If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied.

*Id.* (citing 20 C.F.R. § 404.1535(a)).

In *Fennell v. Astrue*, this Court outlined the process an ALJ must follow under 20 CFR § 404.1535 when determining whether the contributing factor of alcoholism is material to the determination of disability:

> How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(a)     General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b)     Process we will follow when we have medical evidence of your drug addiction or alcoholism.

(1)     The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2)     In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i)     If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii)     If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

*Fennell v. Astrue*, C/A No. 4:09-3051-JFA-TER, 2011 WL 1049094, at *5 (D.S.C. March 21, 2011) (following the reasoning of *Puffenbarger v. Comm'r*, C/A No. 1:09CV77, 2010 WL 3521583, at *3 (N.D.W.Va. Sept. 7, 2010)).   The *Puffenbarger* Court noted that the applicable regulations require an ALJ to complete the five-step inquiry and determine

whether a claimant is disabled before determining whether the claimant would still be found disabled if he stopped abusing drugs or alcohol. *Id.*

In evaluating Plaintiff's disability claim, the ALJ noted that Dr. Swinton-Jamison confirmed Plaintiff was "mentally stable but continued to have problems with stress management, labile mood, and poor social and cognitive functioning" [R. 28], thus, creating circumstances or limitations dictating a finding of disability [R. 28–30]. After the ALJ found Plaintiff disabled, he considered the evidence demonstrating the Plaintiff's narcotic dependency and found Plaintiff's substance abuse was a contributing factor material to the determination of disability. Considering Plaintiff's mental functioning in the absence of his substance abuse, the ALJ found Plaintiff exhibited "mild limitations in activities of daily living, mild limitations in social functioning, mild limitations in concentration, persistence or pace, and no episodes of decompensation."[9]  [R. 30.]  Thus, with no more than "mild" limitations in any of the first three functional areas and "no" limitation in the fourth area, the ALJ found Plaintiff's mental impairments, if he stopped the substance abuse, would be nonsevere.[10] [*Id.*] The ALJ explained that,

---

[9]Even considering the effects of substance abuse on Plaintiff's mental impairment, the ALJ found Plaintiff did not meet the severity requirements of Listings 12.04 or 12.09. [R. 24.] Plaintiff made no objection to the ALJ's listing analysis.

[10]Plaintiff challenges the ALJ's finding that Plaintiff was able to perform a "wide range of light work with no mental impairments in the absence of substance use." [Doc. 22 at 24–25.] Plaintiff misstates the ALJ's finding. The ALJ expressly found that, in the absence of substance use, Plaintiff would still have mild impairments in three functional areas (activities of daily living, social functioning, and in concentration, persistence or pace); however, with these mild limitations and no episodes of decompensation, the Plaintiff's mental impairments were not severe as defined by the Listing. [R. 30.] The ALJ did not find that Plaintiff had no mental impairments as Plaintiff suggests.

> As to his substance use disorder, the evidence demonstrates that, in the absence of substance use disorder, the claimant was mentally stable and was not a threat to himself or others and had no psychosis, anxiety, mood swings, or depression. He was alert and oriented to all spheres with appropriate appearance, behavior, mood, and affect (Exhibit 22F/2-4). Accordingly, the claimant would not have a "severe" mental impairment in the absence of substance use disorder. In the absence of substance use disorder, no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, and the claimant's mental condition is not of a severity to satisfy that described by any listed impairment.

[R. 31.]

Upon examination of the record evidence, the Court notes that there is considerable evidence of Plaintiff abuse of substances, including prescription drugs and cough medicine, during the time period between March 2010 and November 2011 when Plaintiff was being treated by Dr. Swinton-Jamison, whether or not Dr. Swinton-Jamison referenced or was aware of Plaintiff's substance use. For instance, on September 25, 2010, Plaintiff presented to the emergency room ("ER") with severe shakes and treatment notes indicate Plaintiff ran out of medication due to over use during the preceding few weeks due to increased back pain. [R. 566.] On exam, Plaintiff had normal appearance throughout all extremities, 5/5 in major muscle groups, and gross-sensory intact. [*Id.*] Treatment notes indicate "likely narcotic withdrawal." [R. 567–68.] Plaintiff again was seen in the ER on April 28, 2011, presenting for "drug abuse" and contending he misunderstood his pain management doctor and had gone through his prescribed medications in two weeks. [R. 556.] Plaintiff was diagnosed with "substance abuse and opiate dependance." [R. 559.] On April 29, 2011, Plaintiff was admitted to the Behavioral Health Unit at Kings Mountain Hospital and placed on opiate detoxification protocol and mental health protocol with

28

observation checks for safety.  [R. 614.]  Against medical advice, however, Plaintiff was discharged on May 2, 2011, but was noted to have no withdrawal or craving; and no psychosis, anxiety, depression or mood swings.  [R. 615.]  Plaintiff's psychiatric discharge summary noted "opioid dependence, nicotine dependence, cannabis dependence, benzadiazepine dependence, and mood disorder not otherwise specified."  [R. 616.] Plaintiff was seen again on May 8, 2011, in the ER due to withdrawal symptoms from illegally purchased morphine tablets.  [R. 547.]  Nursing notes indicate Plaintiff was going through withdrawals and refused to see his previous doctor because the doctor "did the opposite of what he wanted." [R. 552.] Plaintiff again was seen in the ER on June 9, 2011, complaining that he thought he was getting ready to go through opiate withdrawals and admitting that he drank cough medicine to reduce his nervousness.  [R. 544.]

Considering the record evidence, the ALJ's decision, and the parties' positions, the Court is constrained to find that the ALJ's decision to give little weight to Dr. Swinton-Jamison's opinion, if Plaintiff ceased substance abuse, is supported by substantial evidence. Plaintiff does not challenge the ALJ's listing analysis with respect to Plaintiff's mental impairments, nor does Plaintiff challenge the ALJ's credibility findings.  And, while Plaintiff contends the ALJ rejected findings of treating and state agency physicians which were contrary to the ALJ's findings [Doc. 22 at 25], Plaintiff failed to explain what findings by other treating or state agency physicians contradicted the ALJ's findings.[11]  The Court

---

[11]Plaintiff contends that his pain and mental disorders render him incapable of sustained employment, not his substance abuse disorder.  [Doc. 22 at 24.]  Plaintiff argues that Drs. Samuel Goots and Leslie Burke included 12.09 Substance abuse Disorders among Plaintiff's "severe" mental impairments in their assessment.  [*Id.*]  Upon review, however, the Court notes that Plaintiff has misstated the record.   Dr. Samuel Goots completed a Psychiatric Review Technique evaluating Plaintiff's mental impairment under Listing 12.04,

is left to speculate as to the basis for Plaintiff's argument. It appears Plaintiff seeks to have the Court re-weigh the evidence and find the Plaintiff's substance abuse should not have been considered a contributing factor material to the determination of disability. Such a re-weighing of the evidence, however, is not within the purview of this Court's jurisdiction on review.

Plaintiff's allegation of error with respect to the ALJ's treatment of Dr. Cribbs's opinions appears to rest solely on Plaintiff's suggestion that Dr. Swinton-Jamison's opinion is supported by Dr. Cribbs's opinions. [Doc. 22 at 24.] As an initial matter, Dr. Cribbs's opinion that Plaintiff is incapable of performing sedentary work, or unable to work, is an administrative finding reserved to the Commissioner and such opinion can never be entitled to controlling weight or special significance. *See James v. Astrue*, C/A No. 2:09-3181-DCN-RSC, 2010 WL 6004061, at *4 (D.S.C. Nov. 18, 2010) (citing SSR 96-5p), *Report and Recommendation adopted by*, 2011 WL 846567 (D.S.C. March 9, 2011). Additionally, a review of Dr. Cribbs's treatment notes show physical and/or neurological exams with normal findings and only mild back pain on palpitation. [R. 601–07.] Plaintiff has failed to provide any explanation as to how the ALJ's finding with respect to Dr. Cribbs's opinions is not supported by substantial evidence, and the Court finds that it is supported by substantial evidence.

---

not 12.09, and found Plaintiff's impairment did not meet the listing requirements and was, therefore, not severe. [R. 423, 433–35.] Dr. Leslie Burke, likewise, completed a Psychiatric Review Technique evaluating Plaintiff's mental impairments under Listing 12.04, not 12.09, and found Plaintiff's impairment did not meet the listing requirements and was, therefore, not severe. [R. 485, 495–97.]

**RFC Determination**

Plaintiff contends the ALJ's RFC findings are conclusory and do not contain sufficient rationale or reference to the supporting evidence. [Doc. 22 at 27.] Plaintiff argues specifically that the ALJ failed to make any finding with regard to Plaintiff's ability to stand, walk, or sit and that any suggestion that Plaintiff has no restriction in these areas is unsupported by the medical evidence of record.[12] [*Id.* at 28.] The Commissioner contends, however, that substantial evidence supports the ALJ's RFC assessment and Plaintiff cannot meet his burden of showing that a more restrictive RFC was warranted merely by itemizing the evidence supporting his diagnosis. [Doc. 24 at 22–23.] The Court agrees with the Commissioner that the RFC assessment is supported by substantial evidence.

### *ALJ's RFC Determination*

The ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> I find that, based on all of the impairments, including the substance use disorders, the claimant has the residual

---

[12]Plaintiff also contends the ALJ's RFC finding is flawed because he found that "there would be no mental restrictions in the absence of substance abuse." [Doc. 22 at 32–33.] As stated above, however, Plaintiff has misstated the ALJ's finding. As previously explained, the ALJ expressly found that, in the absence of substance use, Plaintiff would still have mild impairments in three functional areas (activities of daily living, social functioning, and in concentration, persistence or pace); however, with these mild limitations and no episodes of decompensation, the Plaintiff's mental impairments were not severe as defined by the Listing. [R. 30.] The ALJ did not find that Plaintiff had no mental impairments as Plaintiff contends. Plaintiff also fails to explain why a limitation to "unskilled" work would not accommodate Plaintiff's mild mental impairments. Furthermore, the argument that Plaintiff's medication dosages somehow equate to the level of severity associated with his impairment [*see* Doc. 22 at 34] is not supported by a legal or medical opinion. Additionally, the Court has found the ALJ's treatment of Dr. Swinton-Jamison's opinion is supported by substantial evidence; thus, the Court declines to re-address Plaintiff's arguments regarding the same in its RFC analysis.

> functional capacity to perform unskilled work with restrictions that require lifting and/or carrying no more than 20 pounds occasionally and 10 pounds frequently; no more than occasional stooping, twisting, crouching, kneeling, climbing stairs/ramps, crawling, and balancing; no climbing ladders, ropes, or scaffolds; and missing an average of 4 days of work a month.

[R. 25, Finding 4.]   The ALJ also found that, if Plaintiff stopped the substance abuse, he

would retain the RFC to

> perform work with restrictions that require lifting and/or carrying no more than 20 pounds occasionally and 10 pounds frequently; no more than occasional stooping, twisting, crouching, kneeling, climbing stairs/ramps, crawling, and balancing; no climbing ladders, ropes, or scaffolds.

[R. 31, Finding 12.]

### *Discussion*

The Administration has described the RFC assessment as follows:

> The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of [a claimant]'s ability to do work-related activities. At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the [claimant] can do past relevant work as he or she actually performed it.

> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether [a claimant] is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by-function assessment of the [claimant]'s physical and mental capacities, it may not be possible to determine whether the [claimant] is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

SSR 96-8p, 61 Fed. Reg. 34,474-01, 34,476 (July 2, 1996).  In the course of his assessment, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis.  *Id.* at 34,478.  Further, the Administration has provided guidance as to how the ALJ assesses a claimant's exertional capacity:

> Exertional capacity addresses [a claimant]'s limitations and restrictions of physical strength and defines the [claimant]'s remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately (e.g., "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours"), even if the final RFC assessment will combine activities (e.g., "walk/stand, lift/carry, push/pull"). Although the regulations describing the exertional levels of work . . . pair some functions, it is not invariably the case that treating the activities together will result in the same decisional outcome as treating them separately.
>
> It is especially important that adjudicators consider the capacities separately when deciding whether an individual can do past relevant work. . . .

*Id.* at 34,477.  As the Administration has made clear, the ALJ should assess a claimant's ability to perform the seven strength demands, which is part of the function-by-function assessment of the claimant's abilities.  However, not all courts remand for an ALJ's failure to assess a claimant's abilities on a function-by-function basis.  *See Vo v. Astrue*, 518 F. Supp. 2d 715, 731 (D.S.C. 2007) (noting that not all courts remand on the basis of an ALJ's failure to perform a function-by-function analysis, but, because the court was remanding for another reason, the court provided the ALJ with instructions to explicitly discuss the claimant's abilities on a function-by-function basis).  Upon review, the Court notes the ALJ considered each of Plaintiff's medically determinable impairments in detail. [R. 25–29.]

While the ALJ did not state Plaintiff's RFC in terms of the amount Plaintiff can sit, stand, or walk as part of work-related activities, the ALJ's discussion of the RFC assessment supports the ALJ's conclusion that Plaintiff does not have any limits in these exertional functions greater than required for light work.

RFC determinations may properly contain implicit findings, including a finding regarding lifting, sitting, standing, and walking. *See, e.g., Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir.2006)("In light of SSR 96–8p, [the ALJ's] conclusion [that Plaintiff could perform a range of sedentary work] implicitly contained a finding that [Plaintiff] physically is able to work an eight hour day."); *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (holding that the ALJ implicitly found claimant was not limited in the areas of sitting, standing, and walking, when the ALJ specifically addressed in the RFC the functions in which he found a limitation).  In this case, the ALJ implicitly found Plaintiff capable of performing standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday, consistent with the Administration's definition of light work in SSR 83-13 and SSR 83-14.

In his RFC assessment, the ALJ found that if Plaintiff stopped substance use, Plaintiff was capable of performing unskilled, light work with no more than occasional stooping, twisting, crouching, kneeling, climbing stairs/ramps, crawling, and balancing; no climbing ladders, ropes, or scaffolds.  [R. 31–32.]   The regulations define light work as follows:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the

> primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).  The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. [*Id.*] Sitting may occur intermittently during the remaining time.  [*Id.*]  Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.  [*Id.*]  The presence of particular additional exertional or nonexertional limitations, however, may affect the range of work a plaintiff can perform.  SSR 83–14, 1983 WL 31254, *4 (Jan. 1, 1983).

In determining Plaintiff's RFC, the ALJ explained his evaluation of the medical evidence related to Plaintiff's exertional limitations as follows:

> The claimant alleges disability as of May 22, 2008, at which time he was admitted for back pain (6F/69-75). The medical evidence reveals the claimant has a history of back pain and muscle spasms in his back. He also had complaints of"occasional" radiation of pain to his legs and "occasional" left leg giving out (Exhibit 19F/1). The claimant sought emergency room treatment and physician intervention on numerous occasions from May 2008 through July 2011 for his complaints of persistent severe back pain. The claimant was treated for back pain by Dr. C. P. Dunbar; Dr. Eleanya OgburuOgbonnaya, a pain specialist; and Dr. Floyd Cribbs. The hospital records and the treatment records of his treating physicians show the claimant was treated with various medications and repeatedly prescribed narcotics.   His medications included IV Demerol, Decadron, Dilaudid, MS Contin, Percocet, Lortab, Dltrall, Prednisone, Lyrica, Oxycodone, Skelaxin, Baclofen, Flexeril and Valium.  Dr. Ogburu prescribed a back brace and TENS unit in February

35

2009. He was advised to have physical therapy, but there is no indication he did so (Exhibit 1F, 3F, 4F, 6F, 7F, 10F, 12F, 15F-17F).

A lumbar CT scan on December 20, 2008, showed some disc bulging at L4-5 and L5-S 1 but no signs of any fracture. Clinical examination showed positive straight leg raising at 30 degrees and tenderness in the spine, for which the claimant he was given Morphine prior to discharge (Exhibit 4F/6-12). Lumbar MRI in January 2009 showed mild symmetrical diffuse disc bulge at L4-5 with no more than mild central canal stenosis and no more than mild bilateral foraminal stenosis. There was mild to moderate bilateral facet arthropathy. The impression was mild degenerative disc disease at L4-5 (Exhibit 2F/3). Clinical exam in January 2009 showed focal tenderness in the spine with positive straight leg raising bilaterally consistent with lumbar radiculitis and sacroiliitis (Exhibit 12F/10-12). Lumbar MRI in March 2009, showed an L4-S small left paracentral disc protrusion with very mild impression on the thecal sac (Exhibit 3F/34). Clinical exam showed tenderness to palpation. Clinical exam from May to July 2009 revealed the claimant positive straight leg raising, positive cross-over-leg test, and tenderness in the spine (Exhibit 7F). Lumbar MRI in July 2011 was generally within normal limits but showed a "very slight" disc bulge at L4-LS (Exhibit 17F/4). Exams from January 2010 to December 2011 revealed clinical abnormalities of positive straight leg raising, positive crossover-leg testing, focal tenderness and paraspinal muscle spasms. The claimant had full range of motion of his extremities, intact sensory and motor exam, normal reflexes, and normal gait. The records show the claimant said he had "mild" back pain on palpation with no radiation (Exhibit 19F/3). He also admitted that he was "doing well" and had no significant side effects due to medications. He stated his functional level was "good" (Exhibit 15F, 16F, 17F, 19F).

[R. 26.]

Upon considering the record evidence, the ALJ concluded that,

After careful review of the entire record, I find that the evidence as to the claimant's condition, activities, and capabilities, including his testimony at the hearing as to pain and other subjective symptoms, is not consistent with the degree of disabling impairments he alleged. The evidence establishes the

claimant has degenerative disc disease that is essentially mild in nature. Although he may experience low back pain, spasm, and tenderness, the laboratory findings showed mild degenerative disc disease with a "very slight" disc bulge at L4-L5. The claimant continued to have full range of motion of his extremities, intact sensory and motor exam, normal reflexes, and normal gait. The claimant confirmed that he was doing well in regard to his back symptoms and stated his functional level was good. Although Dr. Cribbs opined the claimant was unable to perform sedentary work on a full time sustained basis for eight hours a day, 40 hours a week; and that he would miss more than 4 days a month due to back pain, I give little weight to his opinion as it is not supported by the laboratory evidence of mild disc disease, few clinical abnormalities, and the claimant's own admission that he was doing well regarding his back pain. However, I find that the claimant's mild degenerative disc disease reasonably limits the claimant to lifting and/or carrying no more than 20 pounds occasionally and 10 pounds frequently and no more than occasional stooping, twisting, crouching, kneeling, climbing stairs/ramps, crawling, and balancing.

[R. 28.]

To the extent the ALJ should have stated a specific sitting, standing, or walking limitation as part of his RFC finding, his failure to do so in this case was, at most, harmless error because Plaintiff failed to prove his ability to sit, stand, or walk was more limited. *See Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (party attacking the agency's determination normally has the burden of showing that an error warrants reversal of the decision); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1999) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); *see also Grant*, 699 F.2d at 191 (it is a claimant's burden to establish disability in Steps 1 through 4 of the sequential evaluation, including establishing his exertional limitations). In his hypothetical to the vocational expert ("VE"), the ALJ further limited Plaintiff to

unskilled work based on the side effects of Plaintiff's medications. [R. 90.] Based on the limitations in the hypothetical, the VE determined that Plaintiff could perform work at the light and unskilled designation, which included work as a production machine tender and a construction flagger. [R. 91.]

The ALJ accurately reflected the findings of the treating physicians indicating "mild" degenerative disc disease, and noted that no treating physician ever opined regarding limitations on Plaintiff's ability to sit, stand, or walk. Additionally, the Court notes that in a June 2010 Functional Report, Plaintiff reported he could walk a city block before his legs began to hurt, but that he could resume walking after resting 5–10 minutes. [R. 219.] Also, treatment notes consistently showed normal gait, normal range of motion, and an ability to stand without difficulty. [*See, e.g.*, R. 250, 252, 255, 258, 260, 263, 277.] While Plaintiff testified about his left leg buckling and causing him to fall 3–4 times a week [R. 61], the ALJ did not find this testimony credible, and Plaintiff failed to challenge the ALJ's credibility determination on this issue. Additionally, Plaintiff did not testify to any limitation in the amount of time he can sit. Based on the above, the Court finds the ALJ's RFC decision is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.


January  26 , 2015                        s/Jacquelyn D. Austin
Greenville, South Carolina                United States Magistrate Judge